IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEJANDRO DEJESUS, | No. 4:21-CV-01639 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JOHN STEINHART[1] *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MARCH 10, 2023

Plaintiff Alejandro DeJesus, a Pennsylvania state inmate, currently confined in the Mahanoy State Correctional Institution, Frackville, Pennsylvania ("SCI-Mahanoy"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.[2] The action proceeds via an amended complaint.[3] The named Defendants are John Steinhart, Corrections Health Care Administrator ("CHCA"); Lori White, SCI-Mahanoy Deputy Superintendent ("Deputy White"); Dr. Rogers; Dr. Baddick; and Physician Assistants Jenna Williams and Russ Miller.[4] DeJesus alleges that Defendants "acted with deliberate indifference to Plaintiff's serious medical needs

---

[1] Plaintiff references this Defendant in his complaint as John "Stinehart." Doc. 1. Defendants' motion to dismiss reflects the correct spelling as "Steinhart." Doc. 20. Thus, the Court amends the caption in this Memorandum Opinion to reflect the correct spelling of Defendant John Steinhart. The Clerk of Court will be directed to amend the caption of this action to reflect the same.
[2] Doc. 1.
[3] Doc. 19.
[4] *Id.*

by knowingly administering ineffective treatment over the course of one year, and by deliberate delay of needed treatment, beginning January 21, 2020."[5] Additionally, Plaintiff alleges that Defendants "acted with deliberate indifference by failing to protect [Plaintiff] from infectious disease and future harm stemming from COVID-19, in violation of the Eighth Amendment protection against cruel and unusual punishment."[6] For relief, Plaintiff seeks compensatory and punitive damages.[7]

Presently before the Court is a motion to dismiss filed on behalf of Defendants John Steinhart and Lori White.[8] For the reasons set forth below, the Court will grant the Defendants' motion.

## I. STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[9] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[10] In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into

---

[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] Doc. 20.
[9] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[10] *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

the complaint by reference, and matters of which a court may take judicial notice."[11]

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[12] "Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Id*. at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937."[13] Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]

---

[11] *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).
[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").
[13] *Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted).
[14] *Iqbal*, 556 U.S. at 681.

Because DeJesus proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[15]

## II. DEJESUS' COMPLAINT

DeJesus' amended complaint raises various medical deliberate indifference claims which began on January 21, 2020 and spanned the course of a year.[16] Specifically, the pertinent allegations with respect to the moving Defendants are as follows:

- The Defendant, John Steinhart, CHCA, was at all times mentioned herein the Corrections Healthcare Administrator at SCI-Mahanoy who is designated with responsibility for ensuring that all inmates receive medical care, including, but not limited to, scheduling appointments, consultations, and treatments administered by outside medical providers, and for arranging transportation to outside appointments, consultations, and treatment providers pursuant to orders issued by a licensed medical professional. He is also responsible for implementing and monitoring DOC's infectious disease policies, procedures, and protocols.

- The Defendant, Lorie White, CDS, was at all times mentioned herein the Deputy Superintendent over all treatment programs at SCI-Mahanoy. She is designated with responsibility for ensuring that inmates receive medical care, and for implementing and monitoring DOC's infectious disease policies, procedures, and protocols.

- Defendants Steinhart, White, Rodgers, Baddick, Williams, and Miller acted with deliberate indifference to Plaintiff's serious medical needs by knowingly administering ineffective treatment over the course of one year, and by deliberate delay of needed treatment beginning January 21, 2020.

---

[15] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[16] Doc. 19.

- On April 12, 2020, Mr. DeJesus sent a DC-135A Inmate Request Form to Ms. White and complained about suffering from an unknown life threatening ailment that has caused him severe headaches, pain, blurred vision, and many other symptoms since January of 2020, which are becoming unbearable. He further explained that he has been left to suffer cruel and unusual punishment due to mistreatment and begged for her help in obtaining relief without further unnecessary delay. Ms. White then acted with deliberate indifference to Mr. DeJesus' complaint by failing to call or otherwise talk to staff in the medical department to ensure he was receiving adequate medical treatment.

- On May 26, 2020, Mr. DeJesus was discharged from POC, and on May 28, 2020 he sent a DC-135A Request Form to Mr. Steinhart to complain about continuing severe headaches and pain, blurred vision, neck and chest pain, and heavy breathing. He explained the circumstances that he'd been coping with since January of 2020 and indicated that Dr. Rodgers had acted with deliberate indifference to Dr. Newton's recommendation for an MRI. He also told Mr. Steinhart that antibiotics prescribed by Dr. Loscalzo was ineffective and that he was experiencing stomach pain, and respiratory problems.

- Mr. Steinhart responded on June 1, 2020 and indicated that he was not a medical practitioner. Therefore, he could not order/recommend an MRI. Mr. Steinhart, then, significantly indicated that a CAT scan taken on April 29, 2020 show primo/thickening of the sinus, which is consistent with a sinus infection, and that bloodwork done January 25, 2020 also produced results indicating an elevated white blood count, which is also consistent with an infection as well.

- Mr. DeJesus asserts that Mr. Steinhart acted with deliberate indifference to his duty to speak with a medical practitioner to ensure that he received an MRI to confirm an infection and/or eliminate other diagnoses.

- Defendants Steinhart, White, Baddick and Williams acted with deliberate indifference by failing to protect Mr. DeJesus from infectious disease and future harm stemming from COVID-19, in violation of the Eighth Amendment protection against cruel and unusual punishment.

- ■ Mr. DeJesus alleges that Defendants Steinhart, White, Baddick and Williams were informed by their training, the local news media, a written memo, or directly by Secretary Wetzel himself about maintaining six foot social distancing protocols in order to safely protect inmates from future harm associated with the asymptomatic spread of SARS-CoV-2.

- ■ Defendants Steinhart, White Baddick, and Williams then co-signed orders for Mr. DeJesus to be taken to the Restricted Housing Unit where he was placed on quarantine in a single occupancy isolation cell pending the outcome of test results.

- ■ On Monday, November 16, 2020, Defendants Steinhart, White, Dr. Baddick and Williams were informed the Mr. DeJesus' outside lab test produced "inconclusive" results.

- ■ The following day, on November 17, 2020, Defendants Steinhart, White, Baddick and Williams acted with deliberate indifference to the risk of future harm to Mr. DeJesus by knowingly disregarding the "inconclusive" lab test results, and DOC's strict six foot social distancing protocol, while co-signing orders for Mr. DeJesus to be moved to double occupancy cell #41 on FA-housing unit with Inmate, Ernesto Martinez, #JL-1803, who affirmatively tested positive for COVID-19.

- ■ On November 24, 2020, Mr. DeJesus filed Grievance #902078 to complain about Defendants Steinhart, White, Baddick and Williams acing with deliberate indifference to the risk of harm by disregarding "inconclusive" test results, while knowingly exposing him to a COVID positive inmate, in violation of DOC's statewide social distancing protocol.

- ■ During the first weeks of February 2021, Mr. Steinhart arranged for Mr. DeJesus to be taken to Geisinger Hospital for a consultation with Gastroenterologist, Shane Hause, and then acted with deliberate indifference to continuity of care by failing to ensure that medical records accompanied Mr. DeJesus, which explained why he was referred to Specialist Hause.

- Mr. DeJesus alleges here that, but for deliberate indifference by Steinhart, White, Baddick and Williams in knowingly disregarded his Eighth Amendment right to protection from contagious diseases and the unreasonable threat of future harm, he would not have suffered cruel and unusual infliction of pain from COVID-19.[17]

## III. DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....[18]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[19]

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that

---

[17] Doc. 19 at 3-21.
[18] *Id., see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).
[19] *West v. Atkins*, 487 U.S. 42, 48 (1988). *See also Barna v. City of Perth Amboy*, 42 F.3d 809, 815 (3d Cir. 1994).

indicate deliberate indifference to that need."[20] A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.[21] In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."[22]

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[23] Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..."[24] For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice."[25]

---

[20] *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[21] *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[22] *Id*.
[23] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).
[24] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[25] *Id.*, 429 U.S. at 107.

"[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."[26] Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.[27] In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.[28]

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician.[29] The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires.[30]

Corrections Health Care Administrators, like Steinhart, are administrators, not doctors.[31] As such, Steinhart cannot be liable simply for failing to second-guess the medical judgment of Plaintiff's health care providers or for failing to dictate an alternative course of treatment.[32] "[A]bsent a reason to believe (or actual

---

[26] *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).
[27] *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).
[28] *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).
[29] *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996).
[30] *Farmer v. Carlson*, 685 F. Supp. at 1339.
[31] *See Thomas v. Dragovich*, 142 Fed.Appx. 33, 39 (3d Cir. 2005).
[32] *Durmer*, 991 F.2d at 69 (ruling that non-medical defendants "[could not] be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Ascenzi v.*

9

knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."[33]

Here, Plaintiff is essentially complaining that Steinhart did not intervene to establish a different or better course of medical treatment for him. Although Plaintiff was clearly dissatisfied with his level of care, he has failed to allege facts showing that his course of treatment was constitutionally insufficient. Even if he had pled constitutionally inadequate medical care, Plaintiff has not alleged facts showing that Steinhart was in a position to challenge the medical judgment of Plaintiff's health care providers. In fact, Plaintiff's own allegations establish that Steinhart explicitly advised Plaintiff that he lacked authority to order treatment to be given by the treating medical providers.[34] Moreover, Plaintiff's allegations establish that he was receiving ongoing medical attention, together with a variety of treatments,[35] and that Plaintiff merely disagreed with the treatment provided. It

---

*Diaz*, Civil No. 05-1656, 2007 WL 1031516, at *5 (M.D. Pa. Mar. 30, 2007) (holding that prison's health care administrator lacked any medical authority to dictate the course of inmate's treatment and could not be considered deliberately indifferent for failing to second-guess the treating physician's assessment of the inmate's medical needs).

[33] *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).
[34] Doc. 19.
[35] *See id.*, ¶ 15 (administered motrin and ordered a blood test); ¶ 17 (ordered a shot of Toradol); ¶ 21 (offered excedrin); ¶ 23 (ordered blood pressure checks); ¶ 24 (ordered a follow up visit with a Physician's assistant); ¶ 27 (ordered x rays); ¶ 28 (conducted neurological checks); ¶ 30 (prescribed Voltaren); ¶ 31 (issued orders for a CAT scan and MRI)1; ¶ 38 (recommended MRI); ¶ 39 (taken to outside hospital for CAT scan); ¶ 41 (ordered MRI and prescribed antibiotic); ¶ 46 (prescribed antibiotics); ¶ 52 (given Zofran); ¶ 55 (prescribed steroidal antibiotics).

is well-established that, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.[36]

Likewise, Plaintiff's amended complaint fails as a matter of law as against Defendant White. The facts in Plaintiff's amended complaint disclose that the Plaintiff was being seen and treated by prison medical staff. It is well-settled that correctional supervisors, such as Deputy White, cannot be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."[37] Indeed, deferring to the medical judgments of treating medical staff is precisely what we expect of these non-medical prison supervisors.[38] Defendants' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim against them will therefore be granted.

### B. Eighth Amendment Failure to Protect

Plaintiff alleges that Defendants "acted with deliberate indifference by failing to protect [Plaintiff] from infectious disease and future harm stemming from COVID-19, in violation of the Eighth Amendment protection against cruel and unusual punishment." Specifically, he claims that even though Defendants

---

[36] *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976).
[37] *Durmer*, 991 F.2d at 69.
[38] *Spruill*, 372 F.3d at 236.

11

Steinhart and White were "informed by their training, the local news media, a written memo, or directly by Secretary Wetzel himself about maintaining six foot social distancing protocols in order to safely protect inmates from future harm associated with the symptomatic spread of SARS-CoV-2," on November 17, 2020, they "acted with deliberate indifference to the risk of future harm to Mr. DeJesus by knowingly disregarding the 'inconclusive' lab test results, and DOC's strict six foot social distancing protocol, while co-signing orders for Mr. DeJesus to be moved to double occupancy cell #41 on FA-housing unit with Inmate, Ernesto Martinez, #JL-1803, who affirmatively tested positive for COVID-19."[39]

Plaintiff's Eighth Amendment claim based on Defendants' alleged failure to manage the spread of COVID-19 is not plausible. To state a constitutional claim in the context of COVID-19 management, DeJesus must allege facts to support a plausible inference that prison officials were deliberately indifferent to his serious medical needs.[40]

To meet this standard, the facts alleged must reflect that the "Government knew of and disregarded an excessive risk to [his] health and safety."[41] "The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and, in this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a

---

[39] Doc. 19.
[40] *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020).
[41] *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

constitutional defect where concrete action has been taken in response to the COVID-19 pandemic, as constitutional rules " 'are not subject to mechanical application in unfamiliar territory.' "[42] Thus, "where a detention facility has taken concrete steps toward mitigating the medical effects of COVID-19, an incarcerated person will fall 'well short' of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely 'eliminate all risk' of contracting COVID-19, notwithstanding even serious preexisting medical conditions the prisoner may have.[43]

Even accepting as true Plaintiff's allegations that Defendants were not completely compliant with guidance of the Center for Disease Control ("CDC") specific to correctional and detention facilities, these allegations do not support a claim of deliberate indifference.[44] "Simply because the execution of COVID-19 protocols may have been nonoptimal at times, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants."[45] Moreover, the allegation that inmate Martinez tested positive for COVID-19 while

---

[42] *Id*. at 330 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).
[43] *Id*. at 330-31.
[44] *Id*. at *5. *See also Greene v. Ellis*, 2022 WL 4288279, at *3 (D.N.J. Sept. 16, 2022) (prisoner alleged that jail did not provide adequate social distancing and that there was not a mask exchange program, but this was insufficient); *Chapolini v. City of Philadelphia*, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) (allegations that prisoner was housed with multiple cellmates who did not go through proper quarantine insufficient).
[45] *Jones v. County of Allegheny*, 2022 WL 2806779, at *6 (W.D. Pa. June 24, 2022). *See also Easley v. Wetzel*, 2021 WL 1200214, at *6 (W.D. Pa. Feb. 26, 2021) (Lanzillo, M.J.), *report and recommendation adopted*, 2021 WL 1197483 (W.D. Pa. Mar. 30, 2021).

sharing a cell with DeJesus is not itself sufficient to allege deliberate indifference.[46]

## IV.    CONCLUSION

Based on the foregoing, the Court will grant the motion to dismiss filed on behalf of Defendants Steinhart and White and they will be terminated as Defendants.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[46] *See, e.g., Zuber v. Sorber*, No. 22-CV-3661, 2023 WL 144437, at *4 (E.D. Pa. Jan. 9, 2023) (concluding that plaintiff's allegation that his cellmate had COVID-19 was not sufficient to allege that prison officials were deliberately indifferent to plaintiff's health and safety).