## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEJANDRO DEJESUS,      :        No. 4:21-cv-1639
           **Plaintiff**    :
                      :      **(Judge Munley)**
                      :
      **v.**              :
                      :
JOHN STEINHART, et al.,    :
       **Defendants**   :

## MEMORANDUM

## I. Background

Plaintiff Alejandro DeJesus, a Pennsylvania state inmate, currently confined in the Mahanoy State Correctional Institution, Frackville, Pennsylvania ("SCI-Mahanoy"), filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint. (Doc. 19). The named Defendants are John Steinhart, Corrections Health Care Administrator ("CHCA"); Lori White, SCI-Mahanoy Deputy Superintendent ("Deputy White"); Dr. Rogers; Dr. Baddick, and Physician Assistants Jenna Williams and Russ Miller. Id. DeJesus alleges that Defendants "acted with deliberate indifference to Plaintiff's serious medical needs by knowingly administering ineffective treatment over the course of one year, and by deliberate delay of needed treatment, beginning

January 21, 2020." Id. Additionally, Plaintiff alleges that Defendants "acted with deliberate indifference by failing to protect [Plaintiff] from infectious disease and future harm stemming from COVID-19, in violation of the Eighth Amendment protection against cruel and unusual punishment." Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

By Memorandum and Order dated March 10, 2023, the Court granted a motion to dismiss filed on behalf of Corrections Defendants John Steinhart and Lori White, terminating them from the above captioned action and directing the remaining Medical Defendants to file a responsive pleading on, or before, March 31, 2023. (Doc. 26).

On September 18, 2023, remaining Medical Defendants filed a motion to dismiss Plaintiff's complaint for failure to state a claim, (Doc. 43), along with a brief in support. (Doc. 44). By Orders dated October 13, 2023, (Doc. 45) and April 5, 2024, the Court directed Plaintiff to file a brief in opposition to Defendants' motion to dismiss. The Court's most recent Order granted Plaintiff until April 25, 2024, to file a brief in opposition and warned that Plaintiff's failure to file a brief in opposition would result in Defendants' motion being granted as unopposed. Id. To date, however, Plaintiff has failed to file a brief in opposition to Defendants' motion to dismiss, nor requested an enlargement of time within which to do so. Thus, for the for the reasons set

- 2 -

forth below, the Court will grant remaining Defendants' motion to dismiss as unopposed.

## II.   **Standard of Review**

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps.

- 3 -

First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 679, 129 S.Ct. 1937. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' Iqbal, 556 U.S. at 679, 129 S.Ct. 1937." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because DeJesus proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

### III.   DeJesus' Amended Complaint

DeJesus' amended complaint raises various medical deliberate indifference claims which began on January 21, 2020, and spanned the

course of a year. (Doc. 19). Specifically, the pertinent allegations with respect

to the moving Defendants, Dr. Rodgers, Dr. Baddick, and Physician

Assistants Jenna Williams and Russ Miller, are as follows:

> On January 21, 2020, DeJesus began complaining of headaches
> and discharge from his nose. (Doc. 19 at ¶14). On January 21,
> 2020, PA Williams ordered blood work. (Id. at ¶15).
>
> On January 22, 2020, he was taken to the medical department
> on an emergency basis because of his headaches, discharge
> and being disoriented. (Id. at ¶16). DeJesus was examined by
> Dr. Rodgers, who told him he had nasal congestion and tension
> headaches. (Id. at ¶17). The blood test ordered by PA Williams
> showed an elevated white blood count. DeJesus contends that
> this which could indicate an infection. (Id. at ¶18).
>
> DeJesus was seen in the medical department on February 17,
> 2020, and March 3, 2020, by PA Miller for worsening of his
> condition. DeJesus alleges that PA Miller ignored the laboratory
> results. (Id. at ¶¶21-24).
>
> DeJesus was seen on March 8, 2020, and again on March 9,
> 2020, when he saw PA Williams. (Id. at ¶ 27).
>
> On March 16, 2020, and March 18, 2020, he saw PA Miller. (Id.
> at ¶¶28-30). Also on March 18, 2020, he saw Dr. Rodgers. (Id.
> at ¶31). DeJesus believes that PA Miller and Dr. Rodgers ignored
> the laboratory results, showing an elevated white count which
> could possibly be caused by an infection. (Id.). Dr. Rodgers
> discussed that his headaches and discharge problems may be
> stress related. DeJesus claims he was having difficulty talking
> and was confused. (Id. at ¶¶31-32). On March 18, 2020, Dr.
> Rodgers ordered a CT scan. (Id. at ¶31).
>
> On March 19, 2020, DeJesus returned to the medical department
> with continuing complaints of headaches and pain. (Id. at ¶32).

- 5 -

On April 29, 2020, DeJesus was taken to an outside facility for his CT scan. (Id. at ¶39).

On May 7, 2020, DeJesus was taken to the medical department on an emergency basis because of his headaches and other medical problems. (Id. at ¶40).

On May 8, 2020, PA Miller told him that the CT scan results were normal. (Id. at ¶42). Nurse Bing told him that the CT scan results were not what PA Miller was telling him. (Id. at ¶43).

On May 22, 2020, he was placed in a psychiatric observation cell for four days for observation. (Id. at ¶47).

DeJesus was seen on June 8, 10, 12, 15, 2020 for his medical conditions. (Id. at ¶¶50-54).

On June 18, 2020, he saw Dr. Baddick who told him that what started as a simple infection in January 2020 was now much more complicated, and he ordered DeJesus antibiotics. (Id. at ¶55).

On June 30, 2020, he was seen again. (Id. at ¶56).

On July 18, 2020, he saw Dr. Baddick, who told him that the blood work showed a highly elevated IGE level. Dr. Baddick diagnosed him with chronic sinusitis. (Id. at ¶61).

On October 7, 2020, DeJesus tested positive for H Pylori, a stomach infection. (Id. at ¶62).

DeJesus alleges that the Medical Defendant's failed to diagnose that he was allergic to Gluten. He believes that if the Medical Defendants had worked up his signs of a sinus infection, they would have been able to diagnoses that he was allergic to Gluten. (Id. at ¶63).

Dr. Baddick was treating DeJesus' chronic sinusitis with nasal sprays on a twice a day schedule as well as various medications for allergies. (Id. at ¶70).

DeJesus' second claim is an allegation of failing to protect him from being exposed to COVID. (Id. at ¶64).

On November 13, 2020, DeJesus complained of symptoms and was given a nasal swab test for COVID. (Id. at ¶76). DeJesus was placed in a single cell in the Restricted Housing Unit as part of a quarantine program. (Id. at ¶77). The test results from an outside laboratory were inconclusive. (Id. at ¶78).

On November 17, 2020, DeJesus was placed in a cell with a COVID inmate. On November 19, 2020, he was told he needed to be retested because the first test was inconclusive. (Id. at ¶¶79-82). He believes he should not have been placed in a cell with another inmate because the 6 feet apart rule could not be maintained. Id. He believes because he was exposed to COVID, he may suffer future harm. Id.

## IV.   **Discussion**

### A. 1983 Action

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. §1983. The statute provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Id., see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199,1204 (3d Cir. 1996).

To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42,48 (1988). See also Barna v. City of Perth Amboy, 42 F.3d 809,815 (3d Cir. 1994).

## B. Eighth Amendment Medical Claim

In their unopposed motion to dismiss, Defendants contend that Plaintiff has failed to allege facts in support of his allegation that they were deliberately indifferent to his serious medical needs. (Doc. 44).

To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a

"subjective" showing that the defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).

The Third Circuit Court of Appeals has found deliberate indifference when a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

This approach "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." Little v. Lycoming Cnty., 912 F.Supp. 809, 815 (M.D. Pa. 1996) (citing Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F.Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro, 834 F.2d

326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. White v. Napolean, 897 F.2d 103, 108–10 (3d Cir. 1990); see also Estelle, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); Rouse, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' "); Lanzaro, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, the allegations in Plaintiff's amended complaint clearly demonstrate that Plaintiff received ongoing medical attention, along with a variety of treatments,[1] and that Plaintiff merely disagreed with the treatment provided.

---

[1](Doc. 19 at   ¶15 (administered Motrin and ordered a blood test); ¶17 (ordered a shot of Toradol); ¶21 (offered Excedrin); ¶23 (ordered blood pressure checks); ¶24 (ordered a follow up visit with a Physician's assistant); ¶27 (ordered x rays); ¶28 (conducted neurological checks); ¶30 (prescribed Voltaren); ¶31 (issued orders for a CAT scan and MRI)1; ¶38 (recommended MRI); ¶39 (taken to outside hospital for CAT scan); ¶41 (ordered MRI and *(footnote continued on next page)*

However, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

The facts in Plaintiff's amended complaint disclose that the Plaintiff was being seen and treated by prison medical staff. His allegation that he received no care does not conform to his own Amended Complaint. He received repeated blood studies, a CT scan, examinations by multiple providers, antibiotics, treatment for his stomach infection, nasal sprays, treatment for nasal congestion and allergy medications. Thus, Defendants' unopposed motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim will be granted.

---

prescribed antibiotic); ¶46 (prescribed antibiotics); ¶52 (given Zofran); ¶55 (prescribed steroidal antibiotics).

## V.   Conclusion

Based on the foregoing, the Court will grant the motion to dismiss filed on behalf of Medical Defendants Courtney Rodgers, DO, Jenna Williams, PA, Russ Miller, PA and Peter J. Baddick, III, DO.

An appropriate Order follows.

Date: _6/21/24_

_____
JUDGE JULIA K. MUNLEY
United States District Judge